IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00640-SBP

MR. HARIT UMESH VORA,

    Plaintiff,

v.

C4 THERAPEUTICS, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

**Susan Prose, United States Magistrate Judge**

This matter is before the court on "Defendant's Motion to Dismiss Complaint, or in the Alternative, to Transfer Venue," filed September 30, 2022. ECF No. 19 ("Motion to Dismiss" or "Motion"). Plaintiff Harit Umesh Vora, who is pro se, has responded in opposition to the Motion, and Defendant C4 Therapeutics, Inc. ("C4T"), has replied. Response ("Resp."), ECF No. 26; Reply, ECF No. 32. The undersigned Magistrate Judge considers the Motion to Dismiss pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes. ECF No. 48. Having reviewed the Motion and associated briefing and the applicable case law, the court **GRANTS** the Motion to Dismiss. The action is **DISMISSED WITHOUT PREJUDICE** because this court lacks personal jurisdiction over C4T.

**SUMMARY FOR PRO SE PLAINTIFF**

This court is dismissing your case, in its entirety, for lack of personal jurisdiction for reasons substantively identical to those which prompted another court in this District to dismiss a

case that you brought at the same time as this one. *See Vora v. Dionne*, No. 22-cv-00572-CNS-MDB, 2023 WL 1784227, at *1 (D. Colo. Feb. 6, 2023) (recommendation to dismiss case for lack of personal jurisdiction over named defendants), *recommendation adopted*, 2023 WL 2446222 (D. Colo. Mar. 10, 2023) (order dismissing case). The detailed reasoning the court provided in the *Dionne* case applies equally here: "An out-of-state defendant must have sufficient contacts with the State of Colorado before that defendant can be required to appear in a Colorado court. The law provides that a defendant's relationship with, or link to, a plaintiff is not enough for the Court to find personal jurisdiction over that defendant." *Id.*

Here, as was the case with the defendants you sued in the *Dionne* matter, you have not established that C4T has the required contacts with the State of Colorado. Therefore, this court is dismissing your case against C4T without prejudice. This is only a high-level summary of this court's decision. The complete decision is set forth below.

## BACKGROUND

Mr. Vora worked for C4T sometime between 2016 and 2018. Complaint, ECF No. 1 ("Compl.") at 9, 12, 24. On March 15, 2022, Mr. Vora commenced this diversity action against C4T, alleging misconduct in connection with an Employee Confidentiality and Assignment Agreement that Mr. Vora executed on September 19, 2016—apparently when he began employment with C4T. *See* ECF No. 19-1 (the "Agreement"). Although Mr. Vora raises a number of variously-styled claims,[1] his allegations focus on his objection to the enforcement of

---

[1] The claims are labeled as follows: (1) "Complaint," (2) "Whistleblower Request," (3) "Damages Sought," (4) "Requests of the Court," (5) "Plaintiff's Professional Contributions," (6) "Retaliatory Behavior and Failure of Consideration," (7) "Power of Attorney Complaint," (8) "Non-compete and Non-solicitation Covenant," (9) "Constitutional Considerations,"

2

the non-competition clause of the Agreement, which extended until "a period of one (1) year following the termination of [his] employment." *Id.* § 8; *see also* Compl. at 4, 7-11, 18, 26, 30-31 (allegations concerning the "false noncompete" agreement and resulting "blacklisting" of Vora following his leaving C4T's employ). Mr. Vora seeks over ten million dollars in damages from C4T. *Id.* at 14.

On September 30, 2022, C4T moved to dismiss the case, in its entirety, on four grounds: (1) pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction because C4T "is a Massachusetts resident, owns no property in Colorado, has no business office in Colorado, and conducts no regular business in Colorado," (2) pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, (3) pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, and (4) to dismiss all claims as time-barred all claims under Colorado law. Mot. at 1-2. Alternatively, C4T asks this court to transfer the case to the United States District Court for the District of Massachusetts, where it is resident. *Id.* at 1.

## STANDARDS OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(2)

The Court first considers C4T's argument that this case should be dismissed, in its entirety, for lack of personal jurisdiction. *See, e.g.*, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-94 (1998) (holding that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction, and explaining that failing to make a determination about jurisdiction first "carries the courts beyond the bounds of authorized judicial

---

(10) "Citizenship and Jurisdictional Consideration," (11) "Arbitration," and (12) "Trial Requests." Compl. at 16-37.

action and thus offends fundamental principles of separation of powers"); *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003) ("Jurisdiction is a threshold question that a federal court must address before reaching the merits[.]") (quotation omitted).

Federal Rule of Civil Procedure 12(b)(2) authorizes the dismissal of a complaint for lack of personal jurisdiction. When a defendant files a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over that defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). Where, as here, the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing to defeat the motion. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citation omitted). The plaintiff "must make this showing with respect to each of the claims alleged." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (citation omitted). In evaluating whether the plaintiff has made a prima facie showing that personal jurisdiction exists, the court accepts the well-pleaded allegations of the complaint as true. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).

If the presence or absence of personal jurisdiction can be established by reference to the complaint alone, the court need not look further. The plaintiff, however, may also make a prima facie showing "through affidavits or other written materials." *Dental Dynamics*, 946 F.3d at 1228 (citing *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008)). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505 (quoting *Behagen v. Amateur Basketball Ass'n of U.S.*,

4

744 F.2d 731, 733 (10th Cir. 1984)) (internal quotation marks omitted).

## II.      Legal Standard for Pleadings of Pro Se Litigants

Mr. Vora is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding the allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). This rule applies to all proceedings involving pro se litigants. *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1044 n.2, 1048-54 (D. Colo. 2012) (liberally construing pro se pleadings in review of a Rule 12(b)(2) motion to dismiss).

However, Mr. Vora's pro se status does not vitiate his obligation to adhere to, and comply with, "the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (stating that a pro se litigant must "comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure"). Thus, while the court makes "some allowances" for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with the pleading requirements," the court "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110); *see also Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (cautioning that the court may not "construct arguments or theories for the [pro se] plaintiff in

5

the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

I.   **C4T's Motion to Dismiss**

To establish personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show: (1) that jurisdiction is legitimate under the laws of the forum state; and (2) that the exercise of jurisdiction does not offend the Fourteenth Amendment's Due Process Clause. *Dental Dynamics*, 946 F.3d at 1228 (citing *Walden v. Fiore*, 571 U.S. 277, 282 (2014)). Colorado's long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions[.]" *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193-94 (Colo. 2005) (citing *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002)); *accord Old Republic*, 877 F.3d at 903. Therefore, the jurisdictional analysis here reduces to a single inquiry of whether the exercise of personal jurisdiction over C4T comports with the requirements of federal due process. *Old Republic*, 877 F.3d at 903. Federal law, rather than state law, guides this analysis. *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1198-99 (D. Colo. 2015).

"The Due Process Clause authorizes personal jurisdiction if two elements are met." *Dental Dynamics*, 946 F.3d at 1229. "First, a defendant must have 'purposefully established minimum contacts with the forum state.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Sufficient minimum contacts with the forum state allow the defendant to "reasonably anticipate being haled into court there." *Monge v. RG Petro-Mach. (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012) (quotation omitted). This requires a showing of more than "random, fortuitous, or attenuated contacts[;"] instead, the plaintiff must demonstrate that the

defendant "purposefully direct[ed]" its activities at residents of the forum and that the litigation "result[s] from alleged injuries that arise out of or relate to those activities." *Id.* at 613-14. (quotation omitted). "Second, the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The "minimum contacts" requirement may be satisfied by showing either general jurisdiction or specific jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91; *see also Old Republic*, 877 F.3d at 903 ("Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."). "General personal jurisdiction means that a court may exercise jurisdiction over an out-of-state party for all purposes." *Old Republic*, 877 F.3d at 903-04 (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). "General jurisdiction arises where the defendant's contacts with the forum state are 'so continuous and systematic as to render [it] essentially at home' there." *C5 Med. Werks v. CeramTec GMBH*, 937 F.3d 1319, 1323 (10th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alterations in original). Specific personal jurisdiction, by contrast, is "jurisdiction specific to this dispute." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). Specific jurisdiction "allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (citing *Old Republic*, 877 F.3d at 904). The court addresses the applicability of general and specific jurisdiction in turn.

### A. Dismissal for Lack of Personal Jurisdiction

#### 1. No General Jurisdiction

The Supreme Court has emphasized that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). To establish that a defendant is subject to a forum state's general jurisdiction, the plaintiff must demonstrate that the defendant's contacts with the forum state are sufficient to render the defendant "at home" in the forum state. *Goodyear*, 564 U.S. at 919. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (cleaned up). These paradigmatic bases for general jurisdiction recognize that there must be "continuous and systematic" contacts with Colorado in order to find general personal jurisdiction over a corporate defendant like C4T. *See Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

Here, as Mr. Vora acknowledges, C4T is incorporated in Delaware, not Colorado. *See* Decl. of C4T Chief Legal Officer Jolie Siegel ("Siegel Decl."), ECF No. 19-2 ¶ 4; Compl. at 3 (stating that C4T is a Delaware corporation); *see also TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (a court may consider affidavits in determining if it has personal jurisdiction over a defendant). C4T has submitted sworn testimony stating that its principal place of business is in Massachusetts:

> C4T's corporate headquarters and principal place of business are located exclusively in Massachusetts. All of C4T's executive and administrative functions are located in Massachusetts. Moreover, final decisions regarding hiring, termination, and employee discipline, as well as corporate-wide issues relating to operations, are made from C4T's corporate headquarters and principal place of business in Watertown, Massachusetts.

8

Siegel Decl. ¶ 5. Mr. Vora makes no allegations in his complaint, and presents no evidence in his response to the Motion, contradicting these jurisdictional facts.[2] Indeed, Mr. Vora has not come close to demonstrating the requisite continuous and systematic contacts with Colorado required to invoke general jurisdiction over C4T.

In sum, the court finds that Mr. Vora has failed to make a prima facie showing that C4T is subject to general jurisdiction in Colorado. *OMI Holdings*, 149 F.3d at 1091 (plaintiff bears the burden to demonstrate personal jurisdiction); *see also Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1235-36 (D. Colo. 2012) ("*Pro se* status does not relieve Plaintiff of the duty to comply with the requirements of the substantive law[.]").

### 2. No Specific Jurisdiction

To establish specific personal jurisdiction over C4T, Mr. Vora must first show that CRT "purposefully directed" its activities towards Colorado. *Dental Dynamics*, 946 F.3d at 1229. "Purposeful availment requires actions by the Defendant which 'create a substantial connection

---

[2] C4T urges the court to strike Mr. Vora's response to the Motion, a request that should have been presented by separate motion. *See* ECF No. 32 at 1-2; *see also* D.C.COLO.LCivR 7.1(d). Regardless, the court finds that the request lacks merit for two reasons. First, with regard to the exhibits attached to Mr. Vora's response, *see* ECF Nos. 26-1 to 26-5, the court acknowledges that there is a limited universe of materials that can be reviewed in connection with motions under Rule 12(b)(6), *see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), but Mr. Vora is responding to a motion that also seeks dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction. A plaintiff may make a prima facie showing of personal jurisdiction "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings*, 149 F.3d at 1091. In any event, the court finds that nothing in the exhibits bears on the personal jurisdiction issue or alters the court's conclusion that personal jurisdiction over C4T is lacking. Second, this court's practice standards allow response briefs of 25 pages, *see* Prose Practice Standard § VI.C.2, and the court declines to strike the response brief for excessive length.

with the forum state.'" *OMI Holdings*, 149 F.3d at 1092 (quoting *Asahi Metal Indus. Co., Ltd. v. Sup. Ct.*, 480 U.S. 102, 109 (1987)). The court "must examine the quantity *and* quality of *Defendants'* contacts with [the forum] to determine whether the district court's assertion of personal jurisdiction over Defendants comports with due process." *Id.* (emphasis in original). "The purpose of this requirement is to ensure that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, *or of the unilateral activity of another party* or a third person." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quoting *AST Sports Sci.*, 514 F.3d at 1058) (alteration and internal quotation marks omitted) (emphasis added).

In this case, Mr. Vora has failed to provide evidence of any contacts between C4T and Colorado that gave rise to "a substantial connection" between the two. *See OMI Holdings*, 149 F.3d at 1092. Instead, Mr. Vora contends that *his* decision to move to Colorado establishes the minimum contacts necessary for the court to exercise personal jurisdiction over C4T in this case. He asserts that, after he quit his job and relocated here, C4T continued to enforce the Agreement against him. *See, e.g.*, Compl. at 18 (alleging that "[t]he ambiguity in the timeline, pertaining to the non-compete, and its jurisdictional implications, relegating to the Plaintiff's future employer, New Iridium, residing in the State of Colorado, should suffice the court in reviewing the following case in the District of Colorado."); *see also* Resp. at 12-14 (asserting that "non-compete time period" under the Agreement extended into the timeframe when Vora lived in Colorado). Mr. Vora contends that C4T continued to have some authority over a "financial account" of Mr. Vora's (which he apparently opened during the term of his employment with C4T in Massachusetts) after he moved to Colorado, Resp. at 8-10, and that after his relocation to

10

Colorado, he continued to communicate with C4T, and C4T responded. *Id.* at 12-14.

These allegations emphasize that the only reason C4T was in contact with Mr. Vora in this forum is because of the happenstance of *Mr. Vora's* residency and *Mr. Vora's* conduct in deciding to relocate to Colorado. But they fail to show that C4T has the requisite minimum contacts with Colorado to support the exercise of specific jurisdiction over it in this case. The fact that Mr. Vora himself was present in Colorado when he communicated with C4T does not demonstrate that C4T purposefully directed *its own* activities to Colorado. As its Chief Legal Officer stated in a sworn declaration, C4T does not "conduct any regular business in Colorado," and its "executive and administrative functions" are located in Massachusetts. Siegel Decl. ¶¶ 5-6. And while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff," a defendant's relationship with the plaintiff, "standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

Importantly, the defendant's relationship with the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum[.]" *Id.* at 277 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Put another way, the exercise of specific jurisdiction requires that "the suit arises out of or relates to *the defendant's contacts with the forum*." *Daimler*, 571 U.S. at 127 (cleaned up) (emphasis added). It is well-settled that "the *plaintiff* cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277 (emphasis added).

Yet, that is precisely the case here: the evidence before this court shows that Mr. Vora is the sole link between C4T and this forum. C4T's activities purportedly giving rise to the harm alleged by Mr. Vora were not "purposefully directed" at Colorado, *see Dental Dynamics*, 946 F.3d at 1229; the mere fortuity that Mr. Vora chose to move here is insufficient to create

11

personal jurisdiction over a corporation that has no other contacts with this forum.[3] Accordingly, Mr. Vora has failed to make a prima facie showing that specific personal jurisdiction exists over C4T in this case.[4] *See OMI Holdings*, 149 F.3d at 1091.

### B.      Mr. Vora's Request for Jurisdictional Discovery

In concluding that Mr. Vora has failed to meet his burden to establish personal jurisdiction, the court denies his request for jurisdictional discovery embedded in his response to the Motion to Dismiss and in his Motion to Subpoena Financial Information, ECF No. 43. *See* Resp. at 5 (asserting that "[t]he necessity of the Plaintiff to meet this burden of supporting personal jurisdiction can only move forward through discovery"); *id.* at 22 (asserting that "[i]t would not be surprising" if "other employers" communicated with C4T "pertaining to references, or job capacity of the Plaintiff," and contending that "[t]his allegation could only be supported by formal discovery"). While Mr. Vora's request for discovery should have been raised in a separate motion and not in his response to the Motion to Dismiss, *see* D.C.COLO.LCivR 7.1(d), the court

---

[3] Because Mr. Vora has failed to meet his burden to establish minimum contacts between C4T and Colorado, this court need not inquire whether the exercise of personal jurisdiction in this forum would "offend traditional notions of fair play and substantial justice." *See Dental Dynamics*, 946 F.3d at 1229. However, the court observes that, on the record here, "the burden on the defendant" in litigating in this forum would weigh heavily in the court's analysis. Defending an action in Colorado—for a corporation that has no business dealings, property, or offices in this state—is unquestionably burdensome. Nor does the court discern any particular interest this court may have in adjudicating a contract dispute raising alleged violations of Massachusetts law. *See id.*; *see also* Resp. at 9, 12 (asserting that C4T "violate[ed] the state laws of Massachusetts" and that "[t]he state laws of Massachusetts" are controlling in this action).
[4] Because this court does not have personal jurisdiction over C4T, it cannot enter a default judgment against C4T in this matter. *See, e.g.*, *Williams v. Life Savings & Loan*, 802 F. 2d 1200, 1202-03 (10th Cir. 1986) ("A judgment is void when a court enters it lacking in subject matter jurisdiction or jurisdiction over the parties.").

nevertheless considers his request and declines to grant it.

As an initial matter, a litigant has no unfettered right to jurisdictional discovery. "District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues." *Dental Dynamics*, 946 F.3d at 1233 (observing that denials of such discovery requests are reviewed for abuse of discretion) (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). "A district court abuses its discretion in denying a jurisdictional discovery request where the denial prejudices the party seeking discovery." *Id.* (citing *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016), and *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)). Prejudice occurs where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* (quoting *Sizova*, 282 F.3d at 1326). As the party seeking jurisdiction discovery, Mr. Vora bears the burden of showing prejudice. *Id.* (citing *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010)).

Here, Mr. Vora has not shown that he will be prejudiced if jurisdictional discovery is not allowed. He points to no pertinent facts in dispute—such as C4T's state of incorporation, its principal place of business, or its lack of any business activity in Colorado—that might affect the conclusion that this court does not have personal jurisdiction over a Delaware-incorporated entity whose principal place of business is in Massachusetts. If "other employers" (presumably located in Colorado), communicated with C4T about Mr. Vora, as he claims, *see* Resp. at 22, that fact would no more tie C4T to this forum for jurisdictional purposes than C4T's post-employment communications with Mr. Vora. *See, e.g.*, *Walden*, 571 U.S. at 286. At most, Mr. Vora offers up

13

mere speculation that discovery might turn up something that might help him satisfy his burden to establish personal jurisdiction over C4T, but "pure speculation as to the existence of helpful facts is insufficient, as a matter of law, to constitute the type of prejudice that warrants reversing the district court in the area of discovery management." *Dental Dynamics*, 946 F.3d at 1234; *see also Breakthrough Mgmt. Grp.*, 629 F.3d at 1189-90 (holding that district court's denial of a request for jurisdictional discovery was not an abuse of discretion where the request was based on "little more than a hunch that it might yield jurisdictionally relevant facts").

At bottom, Mr. Vora has failed to show that discovery would reveal information actually bearing on the question of whether C4T purposefully availed itself of the privilege of conducting activities in Colorado. *See World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, 138 F. App'x 50, 52 (10th Cir. 2005) (district court does not abuse its discretion when it denies a general, unsupported motion for jurisdictional discovery). The court therefore denies Mr. Vora's request for jurisdictional discovery.

## II.     Dismissal or Transfer

Although this court finds that due process principles prohibit the exercise of personal jurisdiction over C4T, the court may not dismiss the case until it considers whether it is in the interest of justice to cure that jurisdictional defect by transferring the action to another court:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, *if it is in the interest of justice*, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added); *see also Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) (recognizing that § 1631 directs a court to "cure jurisdictional . . . defects by transferring a suit . . . when it is in the interests of justice"); *Driggers v. Clark*, 422 F. App'x 747, 748 (10th Cir. 2011) (where personal jurisdiction is found to be lacking, district court must determine whether claims should be transferred under § 1631 rather than dismissed).

A decision to transfer a case pursuant to § 1631 rests in the discretion of the court. *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011) ("[S]uch transfers a[re] a discretionary option under 28 U.S.C. § 1631 that should be considered to cure deficiencies relating to personal jurisdiction."). "Factors considered in deciding whether a transfer is in the interest of justice include whether the claims would be time barred if filed anew in the proper forum, whether the claims alleged are likely to have merit, and whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction." *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008); *see also Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105 (10th Cir. 2012) (before transferring a case, the transferor court must "satisfy itself that the proposed transferee court has personal jurisdiction over the parties," and determine whether a transfer is in the interest of justice).

The court begins by considering whether Mr. Vora's claims against C4T "are likely to have merit." *In re Cline*, 531 F.3d at 1251; *see also Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) ("[A] court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed.") (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). "As explained in *Phillips*, there is no paradox in this peek at the merits by a court

15

that lacks jurisdiction to adjudicate the case fully, as the court is merely acting on its authority to decide the limited question whether to transfer or dismiss the case." *Arocho v. Lappin*, 461 F. App'x 714, 718 (10th Cir. 2012) (cleaned up). Having taken the required "peek at the merits" for the purpose of determining whether to transfer this case, this court concludes that Mr. Vora's claims, as set forth in the operative complaint in this court, are unlikely to be found to have merit.

Mr. Vora's complaint is verbose and consists in large part of lengthy narrative, legal argument, hypotheticals, and rhetorical questions and answers. But the crux of the matter rests on his objection to the Agreement—specifically, its "Non-Competition and Non-Solicitation" clause. ECF No. 19-1 § 8; *see also* Compl. at 7.

To the extent Mr. Vora believes that the non-compete clause in the Agreement is not enforceable, it does not appear that this claim has merit. Under Massachusetts law,[5] a non-compete clause is enforceable if it is "necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest." *Get in Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 198-99 (D. Mass. 2016) (quotation omitted). Legitimate business interests include "protection of [an employer's] trade secrets, other confidential information, and the good will the employer has acquired[.]" *Id.* at 199. "[C]ourts

---

[5] The Agreement provides that that it "will in all respects be interpreted, enforced and governed under the laws of the Commonwealth of Massachusetts[.]" Agreement ¶ 19. Massachusetts law holds that choice-of-law provisions like the one in the Agreement are enforceable so long as: (1) the application will not contravene Massachusetts' public policy; and (2) the state whose law is chosen "has some substantial relation to the contract." *Nizhoni Health Sys. LLC v. Netsmart Techs., Inc.*, No. 22-cv-11212-DJC, 2023 WL 3657386, at *9 n.11 (D. Mass. May 25, 2023) This court therefore applies Massachusetts law to its analysis.

have upheld non-compete terms significantly longer than one year." *Id.* at 200 (quotation omitted).

Here, it appears to this court that C4T has a strong interest in protecting its "product development, customer information, and marketing strategies," all of which are legitimate business interests. *See Philips Elecs. N. Am. Corp. v. Halperin*, No. 005251, 2000 WL 33171040, at 3 (Mass. Sup. Ct. Dec. 12, 2000). Indeed, the non-compete clause only restricts Mr. Vora from working for any entity "that develops, manufactures or markets any products, or performs any services, that are otherwise competitive with or similar to the products or services" offered by C4. Mr. Vora himself admits that it was in C4T's "financial and business interests, to prevent [Mr. Vora] from using" C4T's technology, which he states is "in the pharmacotherapeutic area of considerable interest[.]" Compl. at 16.

Further, it appears that the scope of the non-compete clause is well within the accepted parameters of Massachusetts law. The non-compete clause only applies for one year, Compl. at 4, which is reasonable as a matter of Massachusetts law. *See Get in Shape Franchise*, 167 F. Supp. 3d at 198-99 (D. Mass. 2016). Further, the non-compete clause's restriction over direct competitors "anywhere in the United States" appears reasonable given the wide-scope of the pharmaceutical industry and the "interest" in C4T's technology. The non-compete clause makes clear that the restriction only applies to entities that operate in C4T's "Field of Interest," which is reasonably restricted to "research, development and commercialization activities relating to bifunctional molecules that induce targeted protein degradation, or such other areas of research, development and commercialization as the Company may be engaged in during the term of this Agreement." Agreement ¶ 8(a).

17

To the extent Mr. Vora is instead challenging whether he breached the non-compete clause or alleging that C4T wrongfully enforced the non-compete clause, these claims also do not appear to be meritorious. In order to succeed on a breach of contract claim under Massachusetts law, a plaintiff must prove: (1) the existence of an agreement supported by consideration; (2) that the plaintiff performed his obligations under the agreement; (3) that the defendant breached the agreement; and (4) that the plaintiff suffered an injury as a result of the defendant's breach. *E.g.*, *Unum Grp. V. Benefit P'ship, Inc.*, 938 F. Supp. 2d 177, 185 (D. Mass. 2013). The Complaint does not sufficiently allege elements (2)-(4).

Taking a high-level view of Mr. Vora's allegations, as Tenth Circuit precedent directs this court to do, *see Haugh*, 210 F.3d at 1150, there is a noteworthy omission in the allegations: his complaint is devoid of factual specifics concerning the conduct by Mr. Vora that prompted his alleged "blacklisting," and it is equally bereft of facts indicating how C4T responded to Mr. Vora's actions. Most pertinent to any claim against C4T, Mr. Vora seemingly ran afoul of the non-competition provision at some point after his departure, allegedly triggering his "blacklisting" by other employers. Compl. at 9, 11, 13, 17, 26, 33. The mere proclamation that Mr. Vora was "blacklisted" is too conclusory to state a facially plausible claim against C4T. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "naked assertions devoid of further factual enhancement" are insufficient to state a claim, and that "a pleading that offers labels and conclusion . . . will not do") (cleaned up). From the facts as pleaded, this court is unable to infer a connection between anything C4T may have done and Mr. Vora's purported "blacklisting" by other employers. It is equally plausible from his complaint to infer that another entity entirely may have been responsible for creating a negative view of Mr. Vora among a group of potential

employers.[6]

In short, the complaint is lacking in "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At best, the complaint alludes to "the mere possibility of misconduct" by C4T, which is insufficient to give rise to a plausible entitlement to relief. *Id.* at 679.

For these reasons, the court finds that transferring this action to the United States District Court for the District of Massachusetts would not be in the interest of justice.[7]

\*   \*   \*

In conclusion, because Mr. Vora has not met his burden to demonstrate this court has personal jurisdiction over C4T, the court dismisses this case without prejudice, pursuant to Rule 12(b)(2), for lack of personal jurisdiction. *See, e.g.*, *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (stating that dismissal for lack of personal jurisdiction under Rule 12(b)(2) should be without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original). In light of the court's conclusion that personal jurisdiction is lacking, the court does not address C4T's alternative

---

[6] Indeed, Mr. Vora has alleged just that in a separate case filed in this district. *See Dionne*, 2023 WL 1784227, at \*1 (noting Vora's allegations that persons "affiliated with Casma Therapeutics, pressured him to 'break his prior non-competes with his former employers,' and then retaliated against him when he refused to do so").

[7] This court's decision does not preclude Mr. Vora from refiling his claims in the District of Massachusetts, should he wish to do so.

arguments for dismissal. *See* Mot. at 9-11.

## CONCLUSION

For the reasons set forth herein, this court **GRANTS** the Motion to Dismiss. ECF No. 19. This action is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction over Defendant C4 Therapeutics, Inc. The Plaintiff's Request Predicated on Rule 26, ECF No. 21, Motion to Subpoena Financial Information, ECF No. 43, and Motion for Default Judgment, ECF No. 34, are accordingly **DENIED**.

DATED: August 1, 2023

BY THE COURT:

Susan Prose
United States Magistrate Judge